AMITY FABRICS, INC., Plaintiff,

v.

Ben DORFMAN, et al., individually, and as Commissioners of the United States Tariff Commission, Defendants.

Civ. A. No. 735-63.

United States District Court
District of Columbia.

July 1, 1963.

George Bronz, Washington, D. C. (Eugene Gressman, Washington, D. C., of counsel), for plaintiff.

William E. Nelson, Attorney, U. S. Department of Justice (John W. Douglas, Asst. Atty. Gen., Civil Division, Harland F. Leathers, Paul J. Grumbly, Attorneys, U. S. Department of Justice, Paul Kaplowitz, General Counsel, and Russell N. Shewmaker, Asst. General Counsel, U. S. Tariff Commission, Washington, D. C., of counsel), for defendants.

YOUNGDAHL, District Judge.

This is an action in the nature of mandamus which seeks to compel the Tariff Commission to include within the Tariff Schedules of the United States, as they are shortly to be published in their final form and proclaimed by the President, a certain provision dealing with "waterproof cloth." Defendants have moved to dismiss the complaint, or in the alternative for summary judgment, on the grounds that the relief sought involves matters left to the discretion of the Commission; that the Customs Court has exclusive jurisdiction of actions to review tariff rate determinations; that no justiciable case or controversy exists between plaintiff and the defendants; and that, on the merits, the complaint presents no claim upon which relief can be granted. Plaintiff has also moved for summary judgment. Assuming *arguendo* that this court has jurisdiction and that plaintiff has standing, this Court has concluded that on the merits, the plaintiff's case must fail.

On May 24, 1962, Congress passed the Tariff Classification Act of 1962, 76 Stat. 72, Pub.L. 87-456 (87th Cong. 2d Sess.), 1962 U.S.Code Cong. & Adm.News p. 91, (hereinafter referred to as the "Act") which amended the Tariff Act of 1930 to provide for a sweeping revision of the tariff classifications as they were studied and reported to Congress by the Tariff Commission. The Act provided for the repeal of titles I and II of the Tariff Act of 1930 (19 U.S.C. §§ 1001 and 1201), and the substitution of a new title I, ten days following the proclamation of the new schedules by the President, § 501(a), which proclamation is to be made after the President has taken

action to bring this country's foreign trade agreements into conformity with the new schedules, § 102. "[A]t the earliest practicable date" before such Presidential proclamation, the President was directed to publish the new schedules. § 101(d). The schedules as thus published were to be those contained in the report of the United States Tariff Commission entitled "Tariff Classification Study, Proposed Revised Tariff Schedules of the United States," which had been submitted to Congress on November 15, 1960, and which had been changed by the Commission in its "First Supplemental Report" to Congress, dated January, 1962. § 101(b) (3). In addition, however, realizing that there was a time lag between November 15, 1960, when the schedules were first reported to Congress, and May 24, 1962, when they were adopted, and a second time lag between such date of adoption and the ultimate date of Presidential publication, Congress provided that

> "changes in tariff treatment made by statute or under authority of law, arising either before the date of the enactment of this Act or on or after such date of enactment and before the date on which the Tariff Schedules of the United States is published * * *" § 101(b) (4) (A),

should be reflected (by such changes in the already reported schedules as the Tariff Commission decided were necessary to achieve such reflection) in the final, published schedules.[1] There was, moreover, a third time lag, the lag between November 15, 1960, when the new schedules were first reported to Congress, and the cut-off date used by the Tariff Commission in preparing those schedules. In its report of November 15, 1960, the Commission reported: "The proposed revised tariff schedules submitted herewith by the Commission reflect rates of duty in force as of July 31, 1960." Tariff Classification Study, Submitting Report, p. 28. Congress may be considered to have adopted this date of July 31, 1960, when it declared that in its determinations under § 101(b) (4), "the Commission shall apply the standards it applied in its report of November 15, 1960 * * *." § 101(b) (4).

The issue, therefore, is whether a particular statute (to be discussed infra) dealing with "waterproof cloth" and approved by the President on September 15, 1960, was a "change in tariff treatment" within the meaning of § 101(b) (4) (A), supra.

The Court has been informed by counsel that this country's tariff schedules, going back at least as far as 1897, always made separate provision for waterproof cotton cloth, which was given lower rates than those applicable to most kinds of cotton cloth which are not waterproof. The presently applicable provi-

---

1. The defendants argue that the Commission has discretion to decide whether or not to reflect such changes in the final schedules, but a reading of the statute shows clearly that the Commission has discretion only to decide *how* such changes are to be reflected, not *whether* they are to be reflected: "such changes in the [already reported schedules] as the Commission decides—(A) are necessary to reflect changes in tariff treatment made by statute or under authority of law, etc.," as completed in the text, supra. That the Commission does not have the discretion it claims is emphasized by § 101 (c) (1), which provides that the changes "provided for" in § 101(b) (4) must be published as a supplemental report and submitted to the President and the Congress. The word used is not "permitted,"

but "provided for." And see House Report No. 1415 (87th Cong.), p. 4: "The only changes which can be made in the tariff schedules, after the enactment of the bill, will be those which the Tariff Commission finds are required to be made by virtue of legislation, court decisions or authoritative administrative decisions, *all of which necessarily must be reflected in the new tariff schedules.*" (Emphasis added.) The Commission, of course, does have discretion under § 101 (b) (4) (B) to propose such changes as the Commission decides "are otherwise necessary," but any such changes can become effective only after 60 calendar days of continuous session of the Congress has elapsed from the time of the submission of the supplemental report.

sion appears as 19 U.S.C. § 1001, par. 907:

> "Tracing cloth, cotton window hollands, and all oilcloths (except silk oilcloths and oilcloths for floors), 30 per centum ad valorem; filled or coated cotton cloths not specially provided for 35 per centum ad valorem; *waterproof cloth, wholly or in chief value of cotton or other vegetable fiber, whether or not in part of India rubber, 40 per centum ad valorem.*" [2]  (Emphasis added.)

No such provision appears in the tariff schedules as they were reported to Congress on November 15, 1960, or as they were modified in any supplemental report. In fact, the new schedules have eliminated the category of "waterproof cloth" completely, and have "assimilated" provisions for such cloth with a new category called "coated or filled fabrics." Schedule 3, Part 4, Subpart C, Items 355.65–356.45, Tariff Classification Study, p. 123 (p. 223 of the one-volume edition of all schedules). The Explanatory Notes of the Commission state that "it does not seem desirable or feasible to establish a classification for fabrics on the basis of water repellency unassociated with a coating or filling concept." Study, Schedule 3, p. 134. The new category of "coated or filled" is defined as meaning that the fabric

> "has been coated or filled (whether or not impregnated) with gums, starches, pastes, clays, plastics materials, rubber, flock, or other substances, so as to visibly and significantly affect the surface or surfaces thereof otherwise than by change in color, whether or not the color has been changed thereby * * *." Study, Schedules 3, p. 121 (p. 221 of the one-volume edition of all schedules).

It will be seen at once that in this definition there is no mention of water-repellency or water-proofness.

Before this new categorization was submitted to Congress, Congress passed the following statute:

> "In order to insure a correct interpretation of the provision 'waterproof cloth' in paragraph 907, Tariff Act of 1930, it is hereby declared that it was and is the true intent and meaning of paragraph 907 to limit the term 'waterproof', when applied to cloth, 'wholly or in chief value of cotton or other vegetable fibre, whether or not in part of India rubber', to cloths of a kind generally used in the manufacture of articles which are designed to afford protection against water to the extent expected in raincoats, protective sheeting, dress shields, umbrellas, and similar articles. Even when cloth possesses water repelling characteristics, it is not classifiable as waterproof cloth within the meaning of paragraph 907, Tariff Act of 1930, unless it is of a kind generally used in the manufacture of articles of the class specified in the preceding sentence." § 2, Public Law 86–795, 74 Stat. 1051, 1960 U.S.Code Cong. & Adm.News, pp. 1452–3 (September 15, 1960).

This statute was clearly not a "change in tariff treatment" within the meaning of § 101(b) (4) (A) of the Tariff Classification Act of 1962, supra. Congress was specifically merely declaring what "was and is the true intent and meaning of paragraph 907" in so far as such paragraph dealt with "waterproof cloth." Such declaration is not a *change* in tariff treatment; it is an authoritative declaration of the true meaning of the category "waterproof cloth" from the time such category was first placed in the tariff schedules. The fact that the Tariff Commission decided to eliminate this category from the new tariff schedules altogether is no indication that the Commission acted contrary to what Congress

---

**2.** The ad valorem rates specified in the statute are not the rates that are actually applied, since rates have generally been lowered through foreign trade agreements authorized by Congress.

intended, especially since the Congress, in the Tariff Classification Act of 1962, supra, specifically approved the new schedules as they were contained in the report of November 15, 1960, and specifically repealed 19 U.S.C. § 1001, of which paragraph 907, dealing with waterproof cloth, is a part. Plaintiff's argument would require the Tariff Commission to incorporate into the new schedules any Congressional interpretation of a category in the old schedules, even if such category has been eliminated completely. Such a result, however, is not supported by common sense, and is not required by § 101(b) (4) (A) of the Tariff Classification Act of 1962.

The defendants' motion for summary judgment will therefore be granted, and plaintiff's motion for summary judgment will be denied. This disposition makes moot the defendants' claims that this Court lacks jurisdiction.